UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,   Criminal No. 13-145 ADM/AJB

        Plaintiff,

v.   **REPORT AND RECOMMENDATION**

Leopoldo Rivera-Leal,

        Defendant.

      Andrew S. Dunne, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

      Shannon R. Elkins, Esq., Assistant Federal Defender, for defendant Leopoldo Rivera-Leal.

      This action came on for hearing before the Court, Chief Magistrate Judge Arthur J. Boylan, on August 7, 2013, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. Testimony was presented and exhibits were received with regard to suppression of search and seizure evidence and derivative statements.

      Based upon the file and documents contained therein, along with testimony and exhibits presented at hearing, and the memorandums of counsel, the magistrate judge makes the following:

**Findings**

      Defendant Leopoldo Rivera-Leal became the subject of a Department of Homeland Security, Immigration and Customs Enforcement ("ICE") investigation in the summer of 2012. The investigation was initiated by Homeland Security Deportation Officer Jennifer Williams based upon information that Mr. Rivera-Leal was unlawfully in the United States

following deportation and was therefore a fugitive from justice. Officer Williams compiled information regarding the defendant, including biographical and identification information, immigration history, criminal history, employment history, last known address, and access to vehicles. The data sources included state, FBI, and ICE records, and the information was incorporated into a Field Operations Worksheet dated August 20, 2012 (Gov't Hrg. Ex. 1). The worksheet also contained a photograph of the subject fugitive. The investigation file was presented to a supervisor who authorized further investigation and arrest efforts regarding the defendant as a "targeted alien." In August or September 2012, the investigation relating to Mr. Rivera-Leal as a targeted alien was transferred to Senior Deportation Officer Scott Latwig.

Officer Latwig believed that defendant Rivera-Leal was employed at Fastenal Company in Owatonna, Minnesota, and his last known residence was an apartment in Owatonna. The employment was confirmed by the company's human resources department through employee records and a photograph. The officer also learned that Mr. Rivera-Leal worked on an afternoon shift at Fastenal Company. On October 10, 2012, Officer Latwig and four additional officers/agents established surveillance at the apartment building in which the defendant was believed to be residing. The apartment units in the approximately 40-unit building each had patio doors but individual apartment access was through interior doors. Officer Latwig and another officer, Nicole Olson, were in an unmarked vehicle located approximately 75 feet from the rear of the building at a position from which the apartment parking area and the building's rear entrance could be observed. The officers had binoculars, a radio, and the Field Operations Worksheet containing the defendant's photograph with them. Two of the vehicles in the parking lot, a Windstar and a Mitsubishi, were vehicles to which the defendant was believed to have had

2

access.  Three other officers were watching the front of the building.

Officer Latwig observed a person he believed to be the target alien, defendant Rivera-Leal, leave the apartment building, get into a white minivan, and drive out of the apartment complex parking lot.  The minivan was not a vehicle known to be used by the defendant as referenced in the Field Operations Worksheet.  Nonetheless, Latwig radioed the other officers to advise them that he believed he had observed the target alien leaving the parking area and he intended to stop the suspect vehicle.  Officer Latwig proceeded to follow the minivan and activated the stop lights on his unmarked car.  The stop was made approximately 3-5 blocks from the apartment building and there was no attempt to flee the officers.  There was no driving offense and the stop was made solely for the purpose of an arrest or detention on immigration charges.

The driver was the sole occupant of the minivan and Officer Latwig identified the him as defendant Rivera-Leal.  The officer identified himself, and Mr. Rivera-Leal was immediately arrested and placed in handcuffs.  He was further read his Miranda rights, along with the waiver of rights, from a preprinted card.[1]  The defendant stated that he understood his rights and was willing to talk with officers, though no questions were immediately asked.

Mr. Rivera-Leal's person was searched by Officer Latwig pursuant to the arrest.  The officer found two pills wrapped in a napkin.  The pills had markings indicating they were prescription medications.  The defendant stated that they were Oxy tabs.  The officer also found

---

[1] The card included the statement of rights in both English and Spanish.  The defendant's country of origin is Mexico.  He was offered the statement in English or Spanish and was given the rights in English when he stated that he understood English.  ICE officers have been instructed by the U.S. Attorney to always give the Miranda advice of rights in connection with illegal reentry arrests in light of the likelihood of federal charges.

a wallet and keys, a legally issued Social Security card, and a marijuana pipe. Mr. Rivera-Leal acknowledged his prior deportation and stated that he did not have a prescription for Oxycontin or Oxycodone. The defendant was not under the influence of drugs or alcohol at the time of the stop and arrest and no threats or promises were made to induce his statements to officers.

Upon learning that the suspect did not have a prescription for Oxycontin or Oxycodone, and confirming that the pills were indeed Oxycodone, Officer Latwig contacted Owatonna city police. The city police arrived within a few minutes and arrested Mr. Rivera-Leal for a drug violation. Owatonna police officers searched the defendant's vehicle and found a loaded firearm. Thereafter, the defendant was charged with fifth-degree controlled substance possession, possession of drug paraphernalia, and illegal possession of a firearm. Deportation Officer Latwig transported Mr. River-Leal to the Steele County Detention Center.

An immigration detainer was placed on the defendant while he was detained at the Steele County facility. Rivera-Leal had previously been deported in 2005. In 2009, he was ticketed in Steele County for possession of a small amount of marijuana (Def. Hrg. Ex. 1), but he was not arrested for the offense. Officer Latwig had no further contact with the defendant with respect to this matter until he was later transported to St. Paul, Minnesota, at which time he was again given the <u>Miranda</u> warning, but no statements were made to the officer.

Based upon the foregoing Findings, the magistrate judge makes the following:

**Conclusions**

**Vehicle Stop.** Officer Latwig had a reasonable and articulable suspicion of criminal activity to justify an investigative stop of the defendant's vehicle, and the stop was not in violation of Mr. Rivera-Leal's constitutional rights. The officer's observed the person he

4

believed to be the defendant get into the vehicle and drive away, and the officer's suspicion that the person was defendant Rivera-Leal was entirely reasonable in light of the officer's immediate access to a photograph of the defendant. Moreover, the officer had recently photographically confirmed Mr. Rivera-Leal's identity with a person in the human resources department at his place of employment. Finally, Officer Latwig had ample evidence that the person identified as defendant Rivera-Leal was unlawfully in the United States. Considering the totality of circumstances, the court concludes that the officer had a particularized and objective basis to suspect Mr. Rivera-Leal's involvement in criminal wrongdoing. United States v. Robinson, 670 F.3d 874, 876 (8th Cir. 2012). It is of essentially no consequence that the vehicle being used by the defendant at the time of the stop was not a vehicle previously known to be used by Mr. Rivera-Leal.

**Arrest and Search Incident to Arrest.** Officer Latwig had knowledge of sufficient evidence to establish probable cause for defendant Leopoldo Rivera-Leal's arrest and the arrest was therefore not unlawful. Moreover, the defendant was lawfully searched incident to his arrest and suppression of evidence obtained as a result of his arrest and search is not required. Probable cause for warrantless arrest exists when facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed an offense. United States v. Jones, 535 F.3d 886, 890 (8th Cir. 2008)(citing Torres-Lona, 491 F.3d 750, 755 (8th Cir. 2007)). The probable cause evaluation entails consideration of events leading up to the arrest, viewed from the standpoint of an objectively reasonable officer. Jones at 890 (citing Maryland v. Pringle 540 U.S. 366, 371, 124 S.Ct. 795 (2003).

Defendant argues that he was unlawfully stopped,[2] arrested, and searched because officers did not have probable cause to believe he was involved in criminal activity under circumstances in which his identity was not sufficiently established. The court concludes that probable cause for the defendant's immediate arrest existed based upon his physical description, his likeness to a photograph in Officer Latwig's immediate possession, and the time of his emergence from the building in conformance with his work schedule. Specifically, Officer Latwig was entitled to the benefits of the collective knowledge of officers, particularly information compiled in the Field Operations Worksheet (Gov't Hrg. Ex. 1) initially prepared by Homeland Security Deportation Officer Jennifer Williams. United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011) (probable cause can be based upon collective knowledge of multiple officers as long as there is some degree of communication). The ensuing search of the defendant's person was a lawful search incident to arrest and evidence thereby obtained need not be suppressed. United States v. Jones, 535 F.3d 886 at 891 (citing United States v. Oakley, 153 F.3d 696, 698 (8th Cir. 1998) (backpack lawfully searched incident to probable cause arrest)).

**Statements and Fingerprints.** Statements made by defendant Leopoldo Rivera-Leal at the scene of his arrest were not obtained in violation of his constitutional rights and suppression of such statements is not required. Defendant was in custody from the moment he was arrested and handcuffed by Officer Latwig. However, statements by the defendant were

---

[2] The defendant asserts that the evidence to justify the vehicle stop did not meet the probable cause standard. The government argues, and the court agrees, that the stop was lawful under the lower reasonable suspicion evidentiary standard. Indeed, the court could conclude that the stop was supported by sufficient evidence to constitute probable cause to believe that the defendant was in the vehicle and was a person involved in criminal activity, i.e. an immigration offense.

made only after he was advised of his rights under Miranda and after he expressly stated that he understood the rights and waived his right to remain silent.  Finally, defendant's statements and fingerprints were not obtained as a result of an unlawful vehicle stop, arrest, or search and were therefore not the fruit of an unlawful seizure of his person or unlawfully obtained evidence.  See United States v. Cotter, 701 F.3d 544, 547-48 (8th Cir. 2012); see also  Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407 (1963).

Based upon the foregoing Findings and Conclusions, the magistrate judge makes the following:

### RECOMMENDATION

The Court **hereby recommends** that defendant Leopoldo Rivera-Leal's Motion to Suppress Statements and Evidence Obtained as a Result of Seizure be **denied** [Docket No. 25].

Dated:   August 28, 2013

  s/Arthur J. Boylan
Arthur J. Boylan
United States Chief Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before September 13, 2013.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.